**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| JUN LI, *et al.,*<br><br>Appellants,<br><br>v.<br><br>WALL007, LLC, *et al.,*<br><br>*Appellees.* | Case No. 3:20-cv-3388-X |

# APPELLANTS' EMERGENCY OPPOSED MOTION FOR A STAY PENDING APPEAL AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

**PAGE**


INTRODUCTION ....................................................................................................................1

RELEVANT FACTS SUPPORTING MOTION FOR STAY .......................................................3

LEGAL ARGUMENT ..............................................................................................................7

A. The Appeal is Likely to Succeed on the Merits ....................................................7

B. Appellants Will Suffer Irreparable Harm Absent a Stay Pending Appeal ..........................9

C. Any Harm to the Appellees Imposed by a Stay will be Slight .......................................10

D. The Public Interest Favors Granting a Stay Pending Appeal ..........................................14

CONCLUSION ....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) .....5

*Batson v. Neal Spelce Associates, Inc.*,
765 F.2d 511 (5th Cir.1985) .....5

*Griffin v. ALCOA*,
564 F.2d 1171 (5th Cir.1977) .....5

*Laddy Valentine v. Bryan Collier*,
20-20207 (5th Cir. 2020) .....5

*Nken v. Holder*, 556 U.S. 418, 426 (2009) .....2

*Romero v. ABC Ins. Co*,
320 F.R.D. 36 (W.D. La. 2017) .....5

**Federal Rules**

F.R.B.P. 7037, 7041, and 9014 .....1

F.R.B.P. 8007 .....1, 5

F.R.C.P. 37(b)(2) and 41(b) .....1

F.R.C.P. 41(b) .....5

R. 37 .....5

**INTRODUCTION**

On November 23, 2020, the Bankruptcy Court, the Honorable Harlin D. Hale, issued an Order Directing Compliance with Prior Orders ("Compliance Order"). *See Appendix ("App.")1*. At that time, the Appellants were preparing to file their opposition papers to the Alleged Debtors' Third Motion to Dismiss, presently scheduled before the Bankruptcy Court on December 9, 2020 ("Third MTD"). *Bankruptcy Docket No. 287; App. 3*. Appellants were given until November 27, 2020, to file their opposition to the Third MTD ("Opposition"). *See App. 2*. For reasons unknown to the Appellants, prior to consideration of the Opposition, or conducting a hearing on the Third MTD, the Bankruptcy Court, sua sponte, entered the Compliance Order and a lengthy supporting opinion, stating, in pertinent part, as follows:

> None of this is meant to disparage the efforts of counsel for the Petitioning Creditors or to accuse them of intentionally causing delay. They have certainly spent a great deal of time and effort attempting to allay the identity concerns without the need for in-person depositions, but this is a difficult problem and the Court simply does not believe they have found a satisfactory alternative to in-person depositions in the United States. In the meantime, the Alleged Debtors and other parties have felt the impact of having an extended gap period for these involuntary cases. Some of the Petitioning Creditors and the Alleged Debtors were engaged in state court litigation when these cases were commenced, and the dispute may need to return to state court. This Court has allowed time for the parties to explore alternatives to holding live depositions in the United States, but these bankruptcy cases need to either move forward or come to an end. If the Petitioning Creditors are unwilling to file a Deposition Agreement in compliance with the Discovery Orders, dismissal without prejudice is appropriate under Federal Rules of Civil Procedure 37(b)(2) and 41(b), made applicable to this matter by Federal Rules of Bankruptcy Procedure 7037, 7041, and 9014. Accordingly, the Court believes it is necessary to impose a deadline for the Petitioning Creditors to file the required Deposition Agreement or **obtain a stay of the Discovery Orders**.
>
> Under Federal Rule of Bankruptcy Procedure 8007, parties must normally present a motion for a stay pending appeal to the bankruptcy court first. The Petitioning Creditors are relieved from that obligation in this case

> because it would be impracticable to do so under the time and the Court affirms it would likely deny such a motion because the Court does not believe the Petitioning Creditors are likely to succeed on the merits of their appeal, the issuance of a stay is likely to substantially harm other parties, and the public interest does not favor a stay. See Nken v. Holder, 556 U.S. 418, 426 (2009) (stating the factors to consider for a stay pending appeal).
>
> IT IS THEREFORE ORDERED that the Alleged Debtors' bankruptcy cases will be dismissed without prejudice if, by the end of the day on December 4, 2020, the Petitioning Creditors have not either (1) filed the required Deposition Agreement or (2) **obtained a stay of the Discovery Orders pending appeal**. [*emphasis supplied*]. *Compliance Order, pgs. 11-12*.

The Bankruptcy Court effectively has rendered its decision on the Third MTD without considering the Opposition (which had yet to be filed) and prior to the hearing date scheduled on the Third MTD. Appellants filed their Opposition of record with the Bankruptcy Court on November 24, 2020. *See Bankruptcy Docket No. 294*. A copy of that Opposition is submitted herewith together with the Third MTD for the Court's convenience. *App. 3*.

It is against the foregoing unusual procedural backdrop, among others in these bankruptcy cases ("Cases"), that causes the Appellants to respectfully request a stay by this Honorable Court of the Compliance Order and the Third MTD, pending this Court's consideration of Appellants' Motions for Leave to Appeal ("Motions for Leave") and, if granted, a stay pending a decision on the subject "Appeals." *See Bankruptcy Docket Nos. 221, 226, 231, 236, and 241; Appellate Docket No. 1; App. 4-8.*

**RELEVANT FACTS SUPPORTING MOTION FOR STAY**

In the Compliance Order, the Bankruptcy Court opines on the issue of the Appellants' inability to fully comply at this time with the Bankruptcy Court's Orders on Motions to Compel and Quash ("Orders to Compel"). More specifically, the Orders to Compel require, inter alia, Appellants' counsel to enter into what the Bankruptcy Court has termed a "Live Deposition Agreement". *See Bankruptcy Docket Nos. 165,167,168 and 169; App. 9-12*. The Live Deposition Agreement has not been expounded upon by the Bankruptcy Court but Appellants' counsel believes that the Bankruptcy Court wants them to file a signed statement (which the Bankruptcy Court termed an "agreement") on the Bankruptcy Court's docket indicating that they will produce certain of the noticed Appellants (who live in mainland China and are citizens of China) for live depositions ("Live Depositions") during the COVID-10 pandemic ("Pandemic") in the United States.

The Bankruptcy Court did not initially set a date in the Orders to Compel for the Live Deposition Agreement to be filed by counsel and did not set forth any particular parameters relative to such depositions (ie., the content of the Live Deposition Agreement or details regarding the conduct of the depositions other than per agreement between counsel in the U.S.). The Live Deposition Agreement has not been produced by counsel for the Appellants for the reasons set forth in the Opposition, the Motions for Leave and herein.

Essentially, the Court is requiring counsel for the Appellants to submit some type of an agreement that they shall be responsible for producing certain Appellants for live, in-person depositions in the United States despite the ongoing, worsening Pandemic and the severely limiting travel restrictions imposed by the President of the United States in his "Presidential Proclamation" 9984. *https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-persons-pose-risk-transmitting-2019-novel-coronavirus/*.

Appellants' counsel advised the Bankruptcy Court that they cannot agree to produce the Appellants at this time in the United States, not because the Appellants refuse to be deposed in the United States, but because they cannot travel here at this time due to the Presidential Proclamation preventing Chinese Nationals (as detailed thoroughly below) from traveling here (with limited exceptions) and, equally as important, due to health concerns that the Appellants and their counsel justifiably have in light of the Pandemic.

Nevertheless, the Bankruptcy Court believes that it is necessary and prudent at this time, amidst a severe uptick in the Pandemic, for the Appellants to travel here to the U.S. for depositions. In order to do so, at their expense, they must first attempt to obtain exit visas from the Chinese Ministry of Foreign Affairs (or other regulate body) which is a very difficult task during the Pandemic. *https://www.thinkglobalhealth.org/article/travel-restrictions-china-due-covid-19*. Then, they must find a flight to the United States which are currently extremely limited and expensive. Prior to arriving in the United States, the Appellants would be required to quarantine in another country-a country which the United States might recognize under the current travel ban law-for at least 14 days. *See Presidential Proclamation*.

Appellants have absolutely no assurances that they will be permitted entry into the United States upon arrival as they are not among the stated exceptions under the Presidential Proclamation. *https://www.natlawreview.com/article/starting-june-1-some-nonimmigrants-people-s-republic-china-barred-entering-us*. Upon conclusion of the depositions, the Appellants would then have to quarantine yet again for at least 14 days prior to or upon attempting to gain re-entry into China. *https://www.china-briefing.com/news/chinas-travel-restrictions-due-to-covid-19-an-explainer/*. The Appellants have no assurance that they will be permitted entry into the U.S. for the depositions or allowed back into their own country due to COVID restrictions in place in China.

https://www.bloomberg.com/news/articles/2020-03-27/fearing-next-wave-china-doesn-t-want-its-diaspora-coming-back.

Even if Appellants and their counsel can orchestrate the foregoing, it would take some time and effort, at a great expense, to bring the noticed Appellants here and back for the depositions. If any link in the chain runs afoul, apparently, under the ruling of the Bankruptcy Court, both the Appellants and their counsel would suffer consequences. In any event, the Bankruptcy Court has now, sua sponte, ruled in the Compliance Order that the Appellants' counsel must agree to file the Live Deposition Agreement or the Petitions will be dismissed before the hearing on the Third MTD, by the end of the day on December 4, 2020. It is noted that there are two hearings currently scheduled on motions to dismiss in the Cases, one on December 9, 2020, on the Third MTD and the other on December 30, 2020, on the First MTD.

As set forth in greater detail in the Opposition and Motions for Leave, there is nothing intentional or in bad faith behind the Appellants' inability to appear at this time in the United States for the Live Depositions. The Opposition makes it very clear that the Appellants would travel here but for the Presidential Proclamation and the additional myriad of logistical and legal issues, not to mention the dire health risks that such travel would pose to the Appellants and to others who they may come into contact with during this Court ordered ordeal.

The Appellants are willing to appear as soon as practical for video depositions in Macau. The Bankruptcy Court determined, on the Appellants' Motion for Reconsideration, that it would not permit such depositions, again insisting that the Appellants travel here or risk dismissal of the Petitions. Appellants' counsel was not even given the chance by the Bankruptcy Court to attempt to arrange such depositions in Macau. *See Motion for Reconsideration, Bankruptcy Docket No. 175; Order Denying Motion for Reconsideration, Bankruptcy Docket No. 202; App. 13-14*.

Contrary to the Bankruptcy Court's determination, mainland Chinese (with very limited exceptions for special and remote regions) can travel to Macau provided that they have a COVID-19 test result demonstrating that they are not infected within 7 days of their travel:




[https://news.gov.mo/detail/en/N20KXUd4P1;jsessionid=8B00BD2915298EA95B1EA26BBEDFE26D.app01?0](https://news.gov.mo/detail/en/N20KXUd4P1;jsessionid=8B00BD2915298EA95B1EA26BBEDFE26D.app01?0); *See also* [https://www.worldaware.com/covid-19-alert-macau-china-maintains-existing-restrictions](https://www.worldaware.com/covid-19-alert-macau-china-maintains-existing-restrictions).

The Appellants have posed various alternatives to the Live Depositions to the Bankruptcy Court all of which are detailed in the Opposition and Motions for Leave. All of those alternatives have been rejected by the Appellees and the Bankruptcy Court. The Appellants respectfully request that this Honorable Court hear the Motions for Leave and, in the interim, grant the Appellants a stay of the Compliance Order and the Third MTD. If this Court grants the Motions for Leave, Appellants request that the stay be extended until the Appeals are decided.

**LEGAL ARGUMENT**

The United States Court of Appeals for the Fifth Circuit recently summarized the standard in this Circuit for a stay pending appeal as follows:

> Thus an appealing party is never entitled to a stay as a matter of right. Id. To obtain a stay, TDCJ must show that (1) its appeal is likely to succeed on the merits, (2) it will suffer irreparable harm absent a stay, (3) a stay will not substantially injure Plaintiffs, and (4) the public interest favors a stay. Id. at 426. We place the greatest weight on the first two factors. Barber v. Bryant, 833 F.3d 510, 511 (5th Cir. 2016). *Laddy Valentine v. Bryan Collier*, 20-20207 (5th Cir. 2020).

**A. The Appeal is Likely to Succeed on the Merits**

Appellants submit that the Appeal will likely succeed as the drastic remedy of dismissal of a proceeding is disfavored in the Fifth Circuit absent a showing by the movant that the failure to abide by a discovery order is done with willful intent or in bad faith interposed for purposes of delay. *See Opposition at pgs. 7-8; App. 3*. Dismissal under the subject Rule (F.R.C.P. 41(b) is applied to bankruptcy cases by F.R.B.P. 704) is authorized when the failure to comply with the court's order results from a party's **"willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply**." *Romero v. ABC Ins. Co,* 320 F.R.D. 36, 40 (W.D. La. 2017)[*emphasis supplied*].

Dismissal is only appropriate where a party's failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply. *Griffin v. ALCOA,* 564 F.2d 1171, 1172 (5th Cir.1977). Dismissal is proper in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 514 (5th Cir.1985).

Appellants respectfully submit that (i) the Appellees have not offered any evidence of willful intent or bad faith by the Appellants, (ii) the Appellants' inability to currently travel here is singularly not their fault due to the Pandemic, and (iii) there are less drastic enforcement mechanisms available to the Bankruptcy Court rather than dismissal of the Petitions. Primarily, Appellants stand ready to appear for depositions by video in Macau where their identities can readily be verified by counsel for the Alleged Debtors. The Bankruptcy Court considered this option but rejected it. *Order Denying Motion for Reconsideration, at page 6; App. 14.*

There are other alternatives as well to the issues of what the Bankruptcy Court has labelled as the legality and identity of the Appellants, although it is not evident to the Appellants exactly what the Bankruptcy Court means by this phrase. The Appellees have not only repeatedly admitted, in their own documents and writings, the identity of the Appellants but also, not surprisingly, never once questioned Appellants' identities or the legality of the loans, when they welcomed receipt of $20,000,000 in loan money from the Appellees which they now refuse to recognize or repay.

The record is replete with admissions by the Appellees of the Appellants' identities as the lenders yet the Bankruptcy Court insists that the Appellants travel here so that the Appellees' counsel can ask them in person if they loaned the money to the Appellees. The record can be established at trial from the documents which the Appellees signed, created and otherwise were parties to when they received the loans and administered them. There is no issue that the loans are due and have not been repaid. The Appellees cannot dispute that they received the loan proceeds because the record in their own documents clearly evidences Appellees' receipt of the loan proceeds from the Appellants. *See, e.g., Opposition, Exhibit "E"; App. 3.* The issue raised by the Appellees is that they are uncertain who to repay yet, to date, they refuse to repay any of

the Appellant lenders on the undisputed loan debts which remain due. *See App. 16, pgs. 9 and 17.*

Appellants submit that they will prevail on the merits of their Appeal and, therefore, request this Honorable Court grant a stay of the Compliance Order and Third MTD pending its determination of the Motions for Leave.

**B. Appellants Will Suffer Irreparable Harm Absent a Stay Pending Appeal**

The Bankruptcy Court has ordered dismissal of the Petitions by the close of the day on December 4, 2020, absent this Court entering an order staying the Compliance Order and Third MTD pending these Appeals. The harm to Appellants will be irreparable as they will be deprived of a trial on the merits of the Petitions.

When the Appellants filed these Petitions they could not have reasonably envisioned that the Pandemic would continue unabated for this long and become materially worse in the United States. Yet, despite this and in good faith, they have tried to fulfill every procedural discovery hurdle the Appellees and the Bankruptcy Court has placed in front of them. This includes twice being required to produce what the Court has termed "wet signatures," once on the Petitions and accompanying Declarations and then again on discovery certifications. *See Opposition, pgs. 5, 9 and Motions for Leave; App. 3-8*.

The Appellants submitted their Passports twice to the Appellees' counsel. *Id*. They furnished the Appellees' counsel with thousands of pages of documents while the Appellees sent the Appellants 49 pages. *Opposition at pg. 10; App. 3*. The Bankruptcy Court has ordered the Appellants to agree to travel here for the Live Depositions and, in the interim, until the Live Deposition Agreement is filed, has precluded the Appellants from taking any further discovery to prepare for the contested "First Motion to Dismiss" filed by the Appellees at the outset of the

cases. *Bankruptcy Docket Nos. 18 and 19; App. 15 and 16*. The First Motion to Dismiss is presently pending for a hearing on the merits on December 30, 2020.

Appellants' inability to travel here is not in any manner their fault yet the Bankruptcy Court would impose the drastic sanction of dismissal on December 4, 2020, rather than fashion an alternative which would allow the Appellees to verify the identities of the Appellants in some other, more expedient and less risky fashion. There are alternatives to address the underlying issues posed by the Bankruptcy Court (verifying that the Appellants are the lenders/creditors) short of them having to spend what would amount to well over a month in attempting to travel here amidst the worst Pandemic this world has known in recent history.

**C. Any Harm to the Appellees Imposed by a Stay will be Slight**

The record in the Bankruptcy Court is devoid of credible evidence by the Appellees supporting any real harm to them should this Court grant a stay pending consideration of the Appeals. The Bankruptcy Court points to stay relief motions pending in the proceedings below as harm to the Appellees and therefore a reason to dismiss the Petitions if the Appellants do not agree to the Live Depositions. Yet, even if the Appellants could agree to such Live Depositions in the United States, the scheduling of them would obviously take some time given the quarantine and travel issues involved in getting the Appellants here to the United States for such Live Depositions. Apparently, rather than schedule the depositions of the Appellants sooner, in Macau via video, the Appellees would prefer to wait months for the scheduling of the Live Depositions in the United States.

There are actually only two stay relief motions pending in the Bankruptcy Court. They are pending for final decision in the Cases of Wall009 and Wall010. *See Bankruptcy Docket Nos. 173 and 179; App. 17 and 18*. The Stay Relief Motion of Southern Star Capital (in Wall009) demonstrates conclusively that the Appellee has not made **any payments** to the lender who is the

moving party. "The Debtor is in default on its obligations under the terms of the Note and Deed of Trust in that the Debtor has failed to make their payments when due and owing. Debtor has made no payments on the note." *See Affidavit of Al J. Keller (Bankruptcy Docket 173-6); App. 17*.

According to the Affidavit of James Richardson, submitted on behalf of FDRE, Inc. and Tamamoi, LLC, the Appellee, Wall010, received a fraudulent conveyance of the subject mortgage property from Carnegie Development, LLC, an entity owned by Timothy Barton, the principal owner and operator of the Appellees, prior to the Petitions. The Richardson Affidavit states:

> 10. As of July 7, 2020, the payoff on the indebtedness to Movant was the sum of $2,150,882.15. This balance remains unpaid and is accruing interest and other applicable charges.
>
> 11. On July 7, 2020, for the first time ever, Carnegie and WALL010, LLC ("Debtor"), through Timothy Barton and Vance McMurry, Esq., provided the following documents to Movant: (a) Promissory Note executed between Carnegie and Debtor on July 16, 2018, (b) Written Consent in Lieu of Special Meeting of Wa11010, LLC, executed on December 30, 2018, (c) Unrecorded Warranty Deed transferring the Property from Carnegie to Debtor executed on January 14, 2019.
>
> 12. Movant has never had any contractual relationship with Debtor. *(Bankruptcy Docket No. 87; App. 19)*.

The point is that it is far from clear that the Appellees have valid, ongoing businesses and actually even own their proclaimed minimal real estate assets as presumed by the Bankruptcy Court. The Appellees have refused in the Cases, or otherwise, to account to the Appellants for (i) the loan proceeds they advanced on promises of repayment totaling $20,000,000 and (ii) any assets actually acquired by the Appellees with the Appellants' loans. *See., e.g. Appellants' Motion to Compel Discovery (Bankruptcy Docket No. 92; App. 20) and Transcripts from*

*Hearings on August 17, 2020 and August 19, 2020; App. 21*. The Appellants have requested proof of the Appellees' supposed assets and business operations (and what they did with $20,000,000 of loan proceeds from Appellants) but the Appellees refuse to provide such evidence and the Bankruptcy Court has stayed all discovery until the Appellants travel here for "Live Depositions."

It is not at all evident why the Appellees would be harmed if this Court would stay the Compliance Order and Third MTD pending a determination of the Motions for Leave. As stated by one creditor (who is not an Appellant):

> 8. In response to paragraph 8 of Debtor's Motion, Creditors point[s] out that Debtor misstates the standard for granting a motion for continuance by limiting the outcome to a benefit to be received by Debtor and its estate, and completely ignoring the prejudice to Creditor whose mortgage note **(a) fully matured almost four months ago, (b) has been in default for more than six months on monetary basis, (c) has been in default for more than ten months on non-monetary basis and (d) who never extended a loan to Debtor but has been snagged in an involuntary bankruptcy due to a shell game played by Carnegie Development, LLC and Debtor, who are both managed by Timothy Barton**. [*emphasis supplied*]. *Bankruptcy Docket No. 201; App. 22*.

From the commencement of the Petitions, the Appellees have employed the same tactics with the Appellants. At the outset of the Cases, Mr. Barton was admonished by the Bankruptcy Court for contacting the Appellants directly and an Order was entered by the Bankruptcy Court precluding such contact. *Bankruptcy Docket No. 48, pg. 4; App. 23*. The Appellees' agent, Vengan Murkat, actually sent a letter directly to the Appellants (who were represented by U.S. counsel), with a letter from Appellees' counsel attached, urging Appellants to dismiss the Petitions. *Opposition Exhibit "E"; App. 3.* Apparently, at the time of Appellees' and counsel's

letters to the Appellants, the Appellees had no issue with their identities. Appellants were forced to file a contempt motion against Barton when this behavior continued. *Docket No. 83; App. 24.*

The Appellants believe that the Appellees, led by Barton, used the loan proceeds of approximately $20,000,000 for the individual purposes of Mr. Barton and not necessarily for the represented investment opportunities portrayed and represented by him to the Appellants. The Appellants' loans were legitimately advanced by them for what Barton and his agents represented would be real estate investment purposes. Yet, the Appellees will not even account to the Appellants for use of the loan proceeds. (*See,* transcript from August 17, 2020 hearing, pages 5-7; App. 21, where Appellees' counsel states that Appellees "drew the line" and that Appellants should not be permitted to delve into the accounting and finances of the Appellees).

Appellants fear that the subject loan proceeds have been commingled with non-debtor assets or, worse yet, dissipated by Barton. Appellants filed the Petitions because they had been repeatedly promised repayment by Barton and his agents to no avail. *See Exhibit "E" to Opposition; App. 3.* Appellants believe a Chapter 7 Trustee should be appointed over the Appellees to investigate fraudulent conveyances and other suspected untoward activities by Barton through the Appellees. The Bankruptcy Court's suggestion in the Compliance Order that there is a possible reorganization here is, respectfully, misplaced. These Cases are liquidations and filed as such. The Appellees have made no effort to convert these Cases to voluntary Chapter 11 proceedings.

There will be no harm to the Appellees caused by a stay because the Appellees have no real businesses or assets. The only assets of Appellees which have been positively identified in these proceedings so far are two parcels of land. These are the parcels of land which are the subject of the Stay Relief Motions and are fully encumbered according to the lenders with no

equity for the Appellees' bankruptcy estates. *See Motions for Relief From Stay, App. Nos. 17-19*. Even worse, one of the two real estate parcels is subject to a claim by the mortgagee that it was fraudulently conveyed to the Appellee and should not even be part of the Appellee's bankruptcy estate. The Appellees have not provided one shred of evidence to the Appellants or the Bankruptcy Court that they have legitimate, ongoing businesses which would warrant denial of a stay pending this Court's more thorough consideration of the Motions for Leave.

Presumably, the Motions for Leave could be considered promptly by this Court as the Appellees have already responded to the Motions for Leave in the Bankruptcy Court, which did not rule on the Motions for Leave, but sent the matter to this Court for consideration.

**D. The Public Interest Favors Granting a Stay Pending Appeal**

The importance of the underlying policy issue here is significant and should be considered by this Honorable Court. The President of the United States issued the Presidential Proclamation severely limiting travel by nationals of various countries into the United States, including Chinese Nationals, with limited exceptions. Although the Bankruptcy Court notes in the Compliance Order, generally, that there are exceptions contained within the Presidential Proclamation, the Bankruptcy Court does not delve into those exceptions and they do not apply here. The Appellants are not U.S. citizens, permanently working here, diplomats, scientists, of national security or health importance or other excepted individuals from the President's travel ban. They are business persons and Chinese citizens who lent considerable sums of money to the Appellees who refuse to repay them and have done everything in their power to obfuscate the record to avoid having to "face the music" of where the money went and what it was really used to fund.

The policy underlying the President's Proclamation is of course to protect the public in the United States from the spreading Pandemic which has only worsened recently. Yet, rather

than find a lesser alternative, the Bankruptcy Court is putting the burden on Appellants' counsel and requiring them to certify that the Appellants will to attempt to travel here, thereby placing not only themselves at great health risk but also all those here in the United States who they come into contact with at risk, including counsel on both sides, court reporters and many others involved in their lengthy stay and depositions. If they do not comply, the Cases will be dismissed on December 4, 2020.

During this horrible, continuing Pandemic, virtually every court throughout our country (including this District Court) has "gone virtual," allowing depositions, court hearings and trials to be conducted by zoom and other types of video calls. Obviously, this is done to protect the public from the Pandemic. Yet, the Bankruptcy Court here will not allow video depositions of the noticed deponents or find some other way to verify their identity as the lenders who are the "Petitioning Creditors" and who are still owed over $20,000,000.

This Court should stay the Compliance Order and Third MTD pending consideration of the Motions for Leave and, if granted, beyond until the Appeals are decided. The public policy issues are important and need to be addressed by this Honorable Court.

## CONCLUSION

In accordance with the foregoing and the Motions for Leave and Opposition, the Appellants respectfully request entry of an Order Staying the Compliance Order and Third MTD pending adjudication of the Motions for Leave.

Respectfully submitted,

Dated: November 25, 2020

/s/ *Jiangang Ou*

Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: 832-767-0339
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
Tel: 215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Appellants*

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred via email with Joyce Lindauer, counsel for WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC ("Appellees"), on November 24, 2020, regarding Appellants' Motion for Stay Pending Appeal and Brief in Support ("Motion"). Ms. Lindauer advised that Appellees oppose the relief sought by Appellants' Motion.

*/s/ Stephen M Packman*
Stephen M. Packman, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2020, I caused to be served a copy of the foregoing by electronic mail upon all parties receiving notice through the Court's CM/ECF Noticing System and upon Joyce Lindauer, Esquire via electronic mail at joyce@joycelindauer.com.

*/s/ Stephen M Packman*
Stephen M. Packman, Esquire